# McGowan *versus* Ahl *et al.*

1. Descriptive warrants confer title from their date if followed up with legal diligence. Their holders are as much bound as the holders of indescriptive warrants, to pay the fees and return them in a reasonable time, which is not more than *seven* years.

2. A younger right will prevail, although it originated before the limitation had closed against the elder, the postponement of the latter on account of laches being out of respect to the Commonwealth rather than to the adverse claimant.

3. A party taking out a warrant and not making a survey and return within a reasonable time, is postponed to any intervening right that has been duly pursued.

4. The payment of the purchase-money, &c., would not remedy the delay in returning the warrant.

5. A warrant was taken out January 4th 1794, survey made in October 1794, but not returned until 1814. *Held,* that it was postponed to a warrant of February 1794, surveyed and returned in 1795.

6. The younger warrant and survey called for the elder as a boundary; by a resurvey of the elder its lines extended into the younger so as to include the locus in quo, which was within the lines of the younger; the court charged that this was not a " case of interference or overlapping surveys, but a question where the division line was located." *Held* to be error.

7. The official draft called for a watercourse as an interior mark, which was not on the ground as marked on the draft, but as marks and corners

sufficient to determine the disputed line were found, the erroneous indication of the watercourse did not impair the survey.

8. The elder survey called for a third as an adjoiner; by running the disputed line according to the original surveys, and conforming the line between the elder and third tract to this running, its lines would not be closed. *Held,* that this would not impeach the disputed line, if the marks on the ground showed where it was primarily run.

ERROR to the Court of Common Pleas of *Cumberland county.*

This was an action of trespass brought to April Term 1864, by Stewart McGowan against Cary W. Ahl, Daniel V. Ahl, John Musselman, J. J. Fleming, and John Wolf, for breaking and entering the plaintiff's close, "situate in the township of South Middleton," and cutting, &c., timber to the value of $4000. The writ was issued to April Term 1864. The defendants pleaded *liberum tenementum* as to the Ahls and Musselman, and that Fleming and Wolf, as their workmen, and by their command, " committed the said several alleged trespasses," &c. The plaintiff replied new assigning, that the parcel of land, &c., "is a certain close in the township aforesaid called the ' Goldthwait tract,' abutting," &c., and is a different close from that mentioned in the plea, &c. To this the defendant pleaded " not guilty."

The cause was tried April 16th 1866, before Graham, P. J. The plaintiff claimed under a warrant dated February 24th 1794, for 400 acres in Dickson township, describing its adjoiners, and including a run; the purchase-money and fees were paid March 13th 1794. On the 1st of January 1795 there was a survey of 288 acres and 118 perches on this warrant, which was returned May 11th 1795, and calls for an adjoining survey in the name of John Love.

The defendants claimed under a warrant to John Love, dated January 4th 1794, and survey October 7th 1794, of 353 acres 147 perches, which was returned July 25th 1814. James Gustine, being the owner of this title, applied for a resurvey, which was made July 30th 1817, and returned for 429 acres 131 perches, and patent issued to him September 23d 1817.[1] It was admitted that the plaintiff owns the land covered by the Goldthwait warrant and the defendants that covered by the Love warrant.

The lines between the Goldthwait and Love tracts, on the Goldthwait survey, were three—one of which was 98 perches long— and were those to which the plaintiff claimed. The lines claimed by the defendants were those of the *resurvey* under the Love warrant, and were seven; four of these substituted the 98 perch line, and overran it about 32 perches. On the official survey of these tracts a watercourse is laid down, which is not found on the ground as it is marked on the draft; it is represented as passing through the Love survey. By stopping the above lines at

---

[1] As appears by evidence in plaintiff's paper-book.

[McGowan *v.* Ahl.]

the end of 98 perches, the stream will not be on the Love survey ; by extending it 32 perches more, it will. On the east of the Goldthwait tract is land surveyed to Deardorff, whose north line, according to both the Love and Deardorff surveys, is the south line of the Love tract. Stopping the line between Love and Goldthwait at 98 perches, and running the lines between Love and Deardorff according to both their surveys, would leave a *gore* between them, whereas by extending this line about 32 perches further, these tracts would adjoin as is called for in their surveys.

The following are the plaintiff's points and the answers of the court :—

1. If the survey of the Goldthwait warrant, dated February 24th 1794, was made on the 1st day of January 1795, and returned into the land office May 11th 1795 ; and the Love survey, although made on the 7th of October 1794, was not returned into the land office until the 25th of July 1814, nearly twenty years after it was made, the Goldthwait title is the elder and superior one to all the land embraced within its lines, and postpones the title of the Love warrant and survey thereto.

" We answer this in the affirmative, if the purchase-money was not paid on the Love warrant. But in the view we take of this case it is not material which survey was the oldest. It is not the case of an interference or overlapping of surveys, for both call for the same line ; but the question is where the division-line called for by both surveys was located by the Love and Goldthwait surveys of 1794 and 1795.

2. If the first proposition be true in law, then if the land cut over and in dispute is embraced within the lines of the Goldthwait survey, plaintiff is entitled to recover, even if the lines of the Love survey should extend over it.

Answer: " If the Goldthwait survey covers the land in dispute, the plaintiff is entitled to recover."

3. If the Deardorff and Fickle line is actually separated from the line of the Love survey, as made on the ground by a gore of vacant land, and is called for as an adjoiner by the Love warrant and survey, although this might give the holder of the Love title a legal right to claim the land up to the Deardorff line, it cannot extend or alter other lines of the Love tract to the prejudice of plaintiff's title.

" We answer this in the affirmative. But if the division line between the Love and Goldthwait surveys, if located as contended for by plaintiff, would cover a vacant strip between the Love and Deardorff lines, and if located as contended for by defendant, would leave no vacancy between the Love and Deardorff lines, but make them correspond, this is an item of evidence relied upon by defendants to show the division line between the parties is where they contend it is alleged to be by the plaintiff."

[McGowan *v.* Ahl.]

" 4. If the jury believe that the white oak at the corner of the Wolf and Love tracts, and the rock at the corner of the Isaac Deardorff and Love tracts, are established corners; and if the lines between these two points run according to the courses and distances called for by both the Goldthwait and Love surveys establish and place the lines between the two latter where the plaintiff contends they do; and if, in addition thereto, that portion of the line between plaintiff's and defendants' tracts is marked by trees, stumps, stones, pine knot and a line of an old fence cleared up to it—these facts establish the true location of the line; and as these lines embrace the land in dispute, plaintiff is entitled to recover.

" We cannot answer this as requested. You must consider the conflicting evidence in the case, and from the whole evidence, and not particular facts relied on by plaintiff, determine where the division line was located.

" 5. The plaintiff having shown the lines of his original survey to have been located and well defined on the ground, which lines cannot be accounted for except on the presumption that they are the true lines of his tract; and the defendants having shown another line running parallel to the plaintiff's at a distance of 32 perches, which is explained and accounted for by the resurvey of 1817, with which it is identical, all conflict arising out of the existence of this latter line is removed, and the plaintiff is entitled to recover.

" We cannot answer this point as requested. We do not recollect that there is any positive evidence fixing the date when either of these lines was run. We think there is a conflict in the evidence adduced on the one side and the other, which you must decide by a careful consideration of all the evidence, and not isolated parts of it.

" 6. The representation of the stream on the Goldthwait survey, not being called for by it as a mark to designate the length of any line, but running over a line without interrupting or breaking it, cannot control the distances marked on the official survey, and indicated by marks on the ground, especially when the proof is that the stream is actually 12 perches beyond the terminus of the line which it is represented as crossing; and this same principle applies to the representation on the Love survey.

Answer: " The representation of the stream on the survey is not sufficient to control a well marked and defined line. But where there is a conflict between two lines, and where the line contended for by plaintiff would not place the stream on defendant's survey as it is represented, but on the lands of plaintiff, this is a fact which it is proper you should take into consideration in ascertaining the true location of the division line."

[McGowan *v.* Ahl.]

The 1st point of the defendant and its answer are as follows :—

The John Love warrant and survey being older than the Gold-thwait warrant and survey, the latter must yield to the former as located on the ground, and the Love survey calling for the Jacob Deardorff, a still older survey, as one of its boundaries, and there being marks upon the ground showing that the line of the Dear-dorff was run as called for upon the draught, and adjoining the Love ; and there being other marks upon the line of the Love sur-vey showing that it was located so as to embrace the line of Dear-dorff as called for by the Love draught, and this line of the Deardorff and the other marks upon the line of Love in a different direction from land in dispute, also found as called for by the draught ; and if they cannot be reached without extending the line S. 21½° E. 98 perches, along the Oxford road, 32 perches beyond the call on the draught, then that extension must be made, and the law presumes it was so made when the warrant was located.

Answer : " The Love warrant not being returned until 1814, we cannot instruct you that it takes precedence of the Goldthwait warrant and survey ; nor do we consider this material in passing upon the true location of the division line, for the reason stated in answer to plaintiff's points ; nor can we instruct you that from the recitals in this point the 98 perch line must be extended 32 perches, but the recitals in this point, so far as proved, are evi-dence to be considered in passing upon the question presented."

There was a verdict for the defendants.

The plaintiff took out a writ of error and assigned for error the answers to the several points, and also the rejection of evi-dence offered in rebuttal, which being considered by the Supreme Court immaterial is not further referred to.

*Miller & Todd,* for plaintiff in error, cited Strauch *v.* Shoe-maker, 1 W. & S. 166 ; Malone *v.* Sallada, 12 Wright 419 ; Quinn *v.* Heart, 7 Id. 337.

*Hepburn & Penrose,* for defendants in error, cited Younkin *v.* Cowan, 10 Casey 198 ; Caldwell *v.* Holler, 4 Wright 161 ; Dreer *v.* Carskadden, 12 Id. 38 ; Malone *v.* Sallada, Id. 419 ; Fox *v.* Lyon, 3 Casey 16 ; Hagerty *v.* Mathers, 7 Id. 348 ; McGinnis *v.* Porter, 8 Harris 80.

The opinion of the court was delivered, May 24th 1866, by

WOODWARD, C. J.—The action was trespass *quare clausum fregit,* for entering and cutting timber trees within the plaintiff's close. The plea was *liberum tenementum,* and thus the titles of the respective parties were in issue.

The plaintiff's title originated in a warrant issued in the name

[McGowan *v.* Ahl.]

of William B. Goldthwait, February 24th 1794, and a survey
in pursuance thereof made the 1st January 1795, and returned
May 11th 1795, calling for an adjoining survey in the name of
John Love.

The defendants claimed under a warrant to John Love, dated
4th January 1794, surveyed October 7th 1794, but not returned
until 25th July 1814. In 1817 the Board of Property, at the
instance of Dr. Gustine, the then owner of this warrant, ordered
a resurvey, which was made and returned, and a patent dated
April 24th 1817 issued to him according to the lines of the re-
survey.

When the cause came to be submitted to the jury the plaintiff
in his 1st point called on the court to say, that under the above-
named dates of the warrants, surveys and returns, the Goldthwait
title is the elder and superior one to all the land embraced within
its lines, and postpones the title of the Love warrant and survey
thereto.

The court replied : " We answer this in the affirmative, if the
purchase-money was not paid on the Love warrant. But in the
view we take of this case it is not material which survey was the
oldest. It is not the case of an interference or overlapping of
surveys, for both call for the same line ; but the question is where
the division-line called for by both surveys was located by the
Love and Goldthwait surveys of 1794 and 1795." This answer
is assigned for error.

The doctrine of the above point is unquestionable law. Although
the Love warrant was descriptive to a common intent, was the
oldest and was first surveyed, yet it lost priority by delay for
nearly twenty years of the return of survey. Descriptive war-
rants, *if followed up with legal diligence,* confer title from their
date ; but it is as much the duty of the holder of such a warrant
to pay the surveying fees, and have his warrant returned to the
surveyor-general's office, within a reasonable time, as it is the
duty of the holder of an indescriptive warrant. A descriptive
warrant may be abandoned or shifted or more land be included
than is called for ; and in order that the Commonwealth may have
precise knowledge of the land that has been actually appropriated
to it, and be paid for any surplus that has been surveyed into it,
the survey as in other cases must be returned within a period
that has been fixed, not to exceed seven years: Chambers *v.*
Mifflin, 1 Penna. R. 78 ; Star *v.* Bradford, 2 Id. 384 ; Strauch *v.*
Shoemaker, 1 W. & S. 166 ; Wilhelm *v.* Shoop, 6 Barr 21.

Nor is it material, as was argued, that the right of the younger
claimant originated before and not after the limitation had closed
against the elder, because the postponement of the elder on
account of laches is from respect to the convenience and rights
of the Commonwealth rather than to the rights of the adverse

[McGowan *v.* Ahl.]

claimant. By taking the warrant, a duty to the Commonwealth is assumed which can be discharged only by making a survey and return within reasonable time, and if it be not performed within the period that limits the Commonwealth's indulgence, the right is postponed to any intervening right that has been duly pursued. And the intervening right is none the worse for being an old and not a recent one. The last becomes first by the postponement of the first as the penalty of neglect.

Then so far as concerns the *doctrine* of this point, the plaintiff was entitled to an unqualified affirmance. Yet it was qualified by the words " if the purchase-money was not paid on the Love warrant." At the date of these warrants, it was the practice of the Land Office to issue no warrants without payment of the purchase-money for the land applied for, which might or might not be the purchase-money for the land, any deficiency being adjusted when the patent issued; but there was no evidence before the jury about the payment of the purchase-money of the Love warrant. And if there had been, their finding that it was all paid would not remedy the legal consequences of the delay in returning the warrant. Then why was this question suggested at all, and, especially, why was it made part of the answer to the plaintiff's proposition? Did the learned judge mean, that if the purchase-money had been paid, twenty years' delay to return the survey would not postpone it to a younger survey? If he did he was clearly in error, and if he did not his error consisted in qualifying his answer with an irrelevant condition of which there was no proof.

But this was not the only error of this answer. It was a mistake to represent this as not a case of interfering or overlapping surveys. The *locus in quo*, as we infer from the novel assignment and from the evidence and the whole course of the trial, was within the Goldthwait lines as originally adopted. We say adopted, because on that side of the tract where this dispute arises, the Goldthwait warrant and survey called for the Love survey, which as we have seen was the elder survey, and the lines of which on the side called for were necessarily adopted as the boundary of the Goldthwait.

These lines were three, the first of which beginning at the chestnut recognised by all the surveyors, ran S. $21\frac{1}{2}°$ W. 98 p. to a pine, thence S. $48°\frac{1}{2}$ E. $27\frac{1}{2}$ p. to a pine, thence S. $79\frac{3}{4}°$ E. 79 p. to a chestnut. These were the lines and corners of the Love survey which the Goldthwait called for, and which became by necessity both of law and fact the lines of the Goldthwait.

Now, on the Goldthwait side of these lines lay the *locus in quo* of the trespass complained of, and although the location of these lines on the ground was indeed a material question in the cause, we shall see in an after part of the case, that their location was

so clearly fixed in the evidence that the jury could not have erred therein, if their attention, instead of being diverted to other objects, had been kept riveted to that point. But the defendants claimed by the lines of the resurvey of the Love warrant, and not by its original lines. This is proved by the patent which they gave in evidence, and which bounds their tract on the Goldthwait side by seven lines instead of three. Thus starting from the chestnut from which the above three lines started, the resurvey ran the same course 19 p., then from an offset of 20 p. ran the same course 41 p., then from another offset by the same course 41½ p., then from an offset which brought the survey back to the original line, he ran by the same course 28 p., making in all 129½ p. on the line S. 21½° W., which, as originally run in 1794, called for only 98 p., an excess of 31½ p. beyond the original survey. From that corner three lines more were run to bring the resurvey to the corner of the Deardorff. Throwing out the lines of the above rectangular offsets, we have thus seven lines substituted by the resurvey for the three of the original survey, the first four of which seven lines substitute one of the original survey, and overrun it 31½ p. And by just so much as these four lines overrun the one line of the original survey of 98 p., by so much does the resurvey of the Love warrant interfere with and overlap the Goldthwait survey. Regarding the case in the light of interfering surveys, which is one of the necessary views to take of it, the Goldthwait warrant and survey must be treated as the prior right, not because it originated first, but because the laches of the holder of the Love warrant postponed it to the Goldthwait. And to whatever timber was cut within the interference the plaintiff showed the best title.

One of the principal reasons assigned for extending the 98 perch line in the manner above described, is the call for a watercourse, or a run which is marked upon the official survey of these tracts, and which is not found where it is marked on the draught. As this watercourse is not a boundary, but only an interior mark, its location is unimportant. No doubt it is inaccurately indicated upon the official draught, but as marks and corners were found sufficient to determine the location of the line of 98 perches, the erroneous indication of the place of the watercourse cannot impair the survey. Such mistakes are very common in respect to streams that cross lines instead of constituting boundaries themselves.

But if it were possible to treat the case as the learned judge treated it, as involving no interference of survey, and only as a question of boundary of a single survey, we think he was betrayed into an error by the 1st point of the defendants, which suggested the location of the Love survey by the Deardorff survey. It is true the Deardorff was older than the Love, and as the latter calls for

the former, it may also be true that these two tracts must be so located that no gore shall be left between them.   But what has the Goldthwait to do with that question ?

This tract does not come between Love and Deardorff, and neither party on the record makes title under the Deardorff.   Its lines are not in question in this suit, nor are they necessary to be adjusted to determine the present dispute—the true boundary between Love and Goldthwait.   That question depends primarily on the lines run upon the ground, and if the marks indicate where these lines were run, you do not impeach them by showing that they would not close the Deardorff survey.

Were not the three lines marked on the official draught as common to both the Love and Goldthwait tracts the true lines ?   We say they were if sufficiently verified by marks on the ground.   But you say that those lines, whilst they might close the surveys to which they belong, would not suit the lines of the Deardorff.   Very well.   Be it so.   The fact weighs nothing in *this* case, because only the Love and Goldthwait warrants, and not the Deardorff warrant, are in question here.   Love and Goldthwait may be well bounded by the three lines I have specified, and yet the Deardorff as the elder warrant be pushed to lines which shall be inconsistent with the three lines, or the Love survey be extended where necessary to meet the Deardorff, or the gore may be permitted to exist between them.   But these will be questions for future consideration between other parties, and cannot be brought into this controversy between the parties now upon the record.

The question, then, seems to come to this, were the three lines sufficiently verified by marks on the ground ?

The testimony of the surveyors on the part of the plaintiff is abundantly sufficient to locate these lines.   They describe corners and marks enough for this purpose.   And the surveys on the part of the defendants verify many of the same marks, and indeed throw no other discredit upon these lines than that they do not coincide with those of the Deardorff.   This was the misleading object of the Deardorff.   It betrayed the surveyors, or some of them, and the court and jury into the rejection of well-marked lines on other tracts that were the only ones in question.   It ought not to have been permitted to do this.   The Goldthwait and the Deardorff do adjoin, perhaps do interfere on one side, but not on the side that is in question here.   The only surveyors who have gone all around the Goldthwait say these lines that are in question here close the surveys well as they are marked upon the official draught.   There they are consistent with themselves, and as they are sufficiently marked upon the ground they must prevail against the Love warrant and all who claim under it.

We think the plaintiff's points should have had the answers herein indicated, and especially that the 1st and 4th points should have been unqualifiedly affirmed.

[McGowan *v.* Ahl.]

The 1st assignment of error is not worth considering, for the question therein suggested is not likely to arise upon the next trial.

The judgment is reversed, and a *venire facias de novo* is awarded.