## West Penn Power Company.

*Land law—Mineral rights under navigable river—Failure to pay purchase money to Commonwealth—Laches—Statute of limitations—Act of April 11, 1848.*

Where a corporation has secured a warrant and survey for mineral rights under a navigable river, but has failed for fifty-seven years to pay the purchase money due the Commonwealth, it has been guilty of such laches that, both under the ten years' limitation in section 3 of the Act of April 11, 1848, P. L. 533, and under the general principles of law, the Commonwealth has a right to consider that the company has abandoned its claim.

Attorney-General's Department.    Opinion to Hon. James F. Woodward, Secretary of Internal Affairs.

SWOOPE, Dep. Att'y-Gen., Nov. 2, 1921.—I received your request for an opinion from this department as to whether or not the West Penn Power

Company, a corporation, was legally entitled to a patent for the mineral rights underlying 100 acres of the bed of the Allegheny River, in Allegheny County, Pennsylvania, by virtue of a warrant granted A. M. Fulton, June 2, 1864, survey made July 6, 1864, and returned to the Land Office and accepted May 15, 1865.

The Allegheny River was declared a navigable river and public highway by the Act of March 21, 1798, 3 Sm. Laws, 320.

The Act of April 11, 1848, P. L. 533, authorized the Surveyor General to issue warrants for not exceeding 100 acres of the bed of any of the public navigable rivers of this Commonwealth, under the limitations therein specified, survey to be had thereunder and return thereof to be made. The first clause of section 2 of this act is in these words: "That from and after the issuing of said warrant, the right to dig and mine for iron, coal, limestone, sand and gravel, fire-clay and other minerals shall vest and be in the party in whose favor the said warrant or warrants shall issue, his heirs or assigns."

Section 3 provides a limitation as follows: "That the person or persons so holding said warrant or warrants, his or their heirs or assigns, shall and may at any time within ten years from the date of the same have and receive a patent for the said land, under the seal of the Commonwealth, in the usual form, granting to them, their heirs and assigns, the right to dig and mine iron, coal, limestone, sand and gravel, fire-clay or any other mineral, on his or their paying into the treasury of the Commonwealth the usual price per acre of public lands, and the usual fees, with interest from the date of the said warrant, subject to the restrictions contained in the 2nd section of this act."

This act was repealed by the Act of March 29, 1849, P. L. 255, but the repeal was repealed, so far as relates to Allegheny County, by the Act of April 16, 1856, P. L. 365, and, as to Fayette County, by the Act of April 18, 1864, P. L. 437, which latter act was held valid in an opinion by this department under date of Nov. 24, 1891 (Opinions, 1891, page 43). The Act of April 16, 1856, P. L. 365, makes a limitation as to this privilege, namely, that "the quantity included in any one warrant shall not exceed 100 acres."

The general policy of the Commonwealth was declared in the Acts of July 15, 1897, P. L. 301, March 28, 1905, P. L. 67, and May 3, 1909, P. L. 413, to be to prohibit the granting of warrants or other office rights in the beds of navigable rivers. Section 3 of the Act of May 3, 1909, is in these words: "That on and after the passage of this act, there shall be no warrants or other office rights granted in any of the counties of the Commonwealth for lands in the beds of navigable rivers, or in beds of streams which are by law declared public highways."

Sections 5 and 6 apply to pending cases, and provide as follows:

"This act shall not be construed to affect any pre-emption rights which may have been acquired under existing laws, or the right of any person who may have an application for vacant land pending with the Secretary of Internal Affairs of the date of the approval of this act.

"That the Secretary of Internal Affairs is hereby authorized and empowered to accept any and all surveys, regularly made and returned to the Department of Internal Affairs, in pursuance of any warrant, location, actual settlement, or order of survey, without limitation as to the quantity of excess or surplus over the amount specified in the warrant or application: Provided, that the purchase money and interest on such excess be paid into the State treasury at the rate stipulated in the warrant, or as otherwise required by law, prior to the acceptance of the return of survey and issuance of a patent

1 D. & C.

thereon: And provided, further, that no acceptance of a return of survey shall, in any case, prejudice or affect the right or title of any other person in or to such excess or surplus land by virtue of a prior warrant, location, actual settlement or order of survey thereon."

The facts in the case before us are that a lien was entered on the lien docket of Allegheny County for the unpaid purchase money, but the purchase money has never been paid, and no patent has ever been issued.

The query you make is whether at this late day the warrantee can demand a patent under the warrant and survey made in 1864, fifty-seven years ago.

The Supreme Court, opinion by Mr. Justice Trunkey (page 576 of opinion), thus defined the rights of a warrantee under the Act of April 11, 1848, P. L. 533: "The Act of April 11, 1848, provided for application, survey and grant of a quantity not exceeding 100 acres of the bed of any navigable river, beginning at a point designated in the application, at low water-mark on the bank of said river and pursuing the course of said river at low water-mark to a designated point, thence at right angles across said river to low water-mark, thence along the shore at low water-mark to a point opposite the place of beginning. A warrantee under this act has the 'right to dig and mine for iron, coal, limestone, sand and gravel, fire-clay and other minerals,' but he takes no title to the soil or sand or anything in the bed of the river. His grant is confined within the limits of low water-mark, and this recognizes the principle that a grant of land by the Commonwealth, bounded on one side by a large navigable river, vests in the grantee the entire land to the line of low water-mark:" Pennsylvania Coal Co. v. Winchester, 109 Pa. 572.

In this passage it will be noted that there are *three* things to be secured by the warrantee before his title is perfected, namely, a warrant, a survey and a grant or patent. The patent is in effect a deed from the Commonwealth, and until it is granted the warrantee has but an incomplete title. In an earlier case, Brandt v. McKeever, 18 Pa. 70, the Supreme Court held that a grant under this Act of 1848 was only a license to mine, and that the property in the minerals did not pass until the minerals were taken and appropriated.

In the case before us the warrantee has obtained two of the three things necessary, but has not secured his patent nor has he paid the purchase money. The Act of 1848, in section 3, says that the warrantee, his heirs or assigns, shall at any time within *ten years* from the date of the warrant, on payment to the Commonwealth of the purchase money, receive a patent. In this case the warrantee has waited fifty-seven years before asking for the patent, and, in our opinion has been guilty of such laches that, both under the ten years' limitation in section 3 of the Act of 1848 and under the general principles of the law, the Commonwealth had a right to consider that he and his assigns had abandoned their claims and no longer laid claim to the minerals for which the warrant was issued.

This conclusion is strengthened by reference to an opinion of Attorney-General Hensel (see Opinions, 1891, page 18), in which he held, even in a case where the prior warrantee had paid the purchase money, but had been negligent in pursuing his rights, that the Commonwealth had a right to consider he had abandoned his claim, and to issue a warrant to another applicant. In this opinion Mr. Hensel said:

"It is a principle often announced in the decisions of the Supreme Court, and may be considered as the settled law of the Commonwealth, that he who obtains a warrant for the purpose of locating land thereunder must follow up the requisites necessary to put the title out of the Commonwealth with due diligence, and it is the duty of the holder of a warrant, descriptive or

West Penn Power Company.

indescriptive, to have his warrant with survey returned to the office of the Secretary of Internal Affairs within a reasonable time. This is essential in order that the Commonwealth may have precise knowledge of the land that has been actually appropriated to it, and be paid for any surplus that has been surveyed into it: McGowan v. Ahl, 53 Pa. 84. The survey must be returned within a period that has been fixed, not to exceed seven years: Chambers v. Mifflin, 1 P. & W. 74; Star v. Bradford, 2 P. & W. 384; Strauch v. Shoemaker, 1 W. & S. 166; Wilhelm v. Shoop, 6 Barr, 21.

"The doctrine established by the courts in considering the question of the relation that a warrantee bears to the Commonwealth is, that whilst a duty is imposed upon a warrantee to proceed expeditiously and within a reasonable time to have a survey made and his rights definitely ascertained and fixed by patent, any indulgence shown by the Commonwealth is a matter of grace as against one who is careless and negligent of his rights."

In accordance with these decisions, you are, therefore, advised that the West Penn Power Company, a corporation, having allowed a period of fifty-seven years to go by since a warrant was issued to the applicant under whom it claims under the Act of April 11, 1848, P. L. 533, and never having paid the purchase money to the Commonwealth, is guilty of laches as well as of failure to comply with the statutory requirement, and is not now entitled to a patent for the mineral rights under the 100 acres of the bed of the Allegheny River, which was surveyed under said warrant.

From Guy H. Davies, Harrisburg, Pa.